Gwen ROSS and Phoenix II, Inc., Appellants,

v.

LINEBARGER, GOGGAN, BLAIR & SAMPSON, L.L.P., Mandy Oyugi, Damon D. Edwards, and Maris A. Blair, Appellees.

No. 01–10–00082–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 18, 2010.

Scott Robert Sommers, Scott R, Sommers, P.C., Houston, TX, for Appellants.

Brian J. Begle, John J. Hightower, Olson & Olson, L.L.P., Gregg S. Weinberg, Roberts Markel, P.C., Michael J. Darlow, Perdue, Brandon, Fielder, Collins & Mott LLP, Houston, TX, Robert Gorringe, Richmond, TX, Kent M. Rider, Linebarger Goggan Blair & Sampson, Austin, TX, for Appellees.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

In this interlocutory appeal, appellants, Gwen Ross and Phoenix II, Inc. (collectively, "Ross") contend that the trial court erred in granting the plea to the jurisdiction of appellees, Linebarger, Goggan, Blair & Sampson, LLP, Mandy Oyugi, Damon D. Edwards, and Maris A. Blair (collectively, "Linebarger").[1] In three issues, Ross contends that the trial court erred in (1) granting Linebarger's plea to the jurisdiction because the law firm and its employees are not entitled to immunity from suit; (2) denying Ross's motion to strike evidence; and (3) overruling Ross's objections to Linebarger's evidence.

We affirm.

### Background

On June 14, 2004, Fort Bend County sued Phoenix, a Texas general partnership not listed with the secretary of state, for collection of unpaid taxes on property located in Sugar Land, Fort Bend County. Fort Bend Independent School District and the City of Sugar Land subsequently joined as additional plaintiffs, and, on February 9, 2005, the trial court entered a default judgment against Phoenix for unpaid taxes.

---

1. Ross sued Fort Bend County, Fort Bend Independent School District, the City of Sugar Land, Patsy Schultz, Linebarger, Goggan, Blair & Sampson, LLP, Mandy Oyugi, Damon D. Edwards, Maris A. Blair, and Robert Gorringe in cause number 08–DCV–166027 in the 400th District Court of Fort Bend County.

Ross discovered that Fort Bend County, Fort Bend Independent School District, and the City of Sugar Land (collectively, "the taxing entities") planned to sell the property pursuant to the default judgment.[2] She contacted the taxing entities, and they referred her to Linebarger. Through Linebarger, Ross entered into an Installment Payment Agreement with the Fort Bend County Tax Assessor, Patsy Schultz, to begin making payments on her past due taxes on November 20, 2005, and to continue making payments until she had paid the 2004 taxes in full. The agreement also stated,

2. PAYMENT FOR CURRENT TAXES As a condition of this Contract, you will pay your 2004 taxes now and all future taxes assessed by the taxing authorities before the taxes become delinquent during the time of this Contract, or this Contract will become null and void IMMEDIATELY.

3. LAWSUITS, JUDGMENTS, and SALES (IF APPLICABLE) If a delinquent tax suit has been filed against you, you agree to the immediate entry of a judgment in this cause ( [handwritten] in cause numbers 04–CV–138630 and 04–CV–136704). Further, you agree taxing authorities may foreclose its tax lien if you default under this Contract.... In the event you default, this Contract will become null and void IMMEDIATELY, and the taxing authorities may proceed with any collection remedies available.

This agreement was dated October 11, 2005, and was signed by Ross as the taxpayer and Oyugi, a Linebarger employee, as the "Tax Deputy."

Ross subsequently defaulted on this agreement. The property was sold in a tax sale to Robert Gorringe on June 6, 2006. On January 12, 2007, Ross paid Patsy Schultz $108,146 to redeem the property. Gorringe objected to the redemption as untimely, and he subsequently sold the property to a third party.[3]

Ross sued, alleging, "Present in this case are three governmental subdivisions, [Fort Bend] County, [the City of Sugar Land], [Fort Bend Independent School District]. Schultz is an official of [Fort Bend] County. Linebarger, Oyugi, Edwards, and Blair are agents of such governmental subdivisions." Ross also sued Robert Gorringe, who purchased the property at the tax sale, for trespass and other claims. In her petition, Ross alleged that she learned of the 2005 tax sale "from painters she had working on the Property and who had observed several individuals taking pictures of the Property and asked why such pictures were being taken. Until informed of such sale by the painters, Ross had no notice of such tax sale." Ross alleged that she contacted the County tax office and was referred to Linebarger. An employee of Linebarger, Michelle Cox, told her she had to bring a cashier's check for $9,000 on or before June 30, 2005.

Ross alleged that she spoke with Oyugi at Linebarger's Richmond office on June 27, 2005, and that Oyugi informed her "that Oyugi had someone who wanted to buy the Property. Ross informed Oyugi that she was not interested in selling the Property." Ross also alleged that Oyugi failed to give her a copy of the November 2005 installment payment agreement, that she was not notified that she was considered in default of that agreement, and that she was not notified of the subsequent sale of the property to Gorringe. Ross further alleged that, after the sale to Gorringe, she

2. The record contains no explanation of the relationship between Ross and Phoenix.

3. This is asserted by both parties, but the record contains no documentation of Gorringe's objection or subsequent sale of the property.

contacted various people, including an unnamed constable and Linebarger employees Edwards and Blair, who misinformed her of the deadline for redeeming the property, and that Schultz, Edwards, and Oyugi gave her conflicting information regarding whether she had successfully redeemed the property.

Ross's petition further stated:

Plaintiffs assert the following causes of action against [Fort Bend] County, [Fort Bend] ISD, City [of Sugar Land], Schultz, Linebarger, Oyugi, Edwards and Blair in their official—if any—and individual capacities:

    A.   Breach of contract

    B.   Negligent misrepresentation

    C.   Wrongful foreclosure

    D.   Depriving Plaintiffs of their rights to substantive and procedural due process of law under the Constitution of the United States of America. To the extent applicable, Plaintiffs assert such claims under 28 U.S.C. section 1983.

    E.   Plaintiffs challenge the validity of the sale of the Property to Gorringe.

    F.   In the alternative, Plaintiffs assert their claim for excess proceeds.

In response, Linebarger filed a "plea to the jurisdiction, motion for summary judgment, and motion to sever." Linebarger argued that it was immune from suit. Specifically, it argued that because its clients, the taxing entities, are protected by governmental immunity, the law firm and its employees "are likewise protected from claims asserted by [Ross] relating to their activities in the collection of taxes for these entities under the doctrine of official immunity."

Attached to Linebarger's plea to the jurisdiction and motion for summary judg-ment were the February 9, 2005 final judgment against Phoenix for the unpaid taxes, the November 2005 installment payment agreement signed by Ross and Oyugi, and several letters addressed to Phoenix and to Phoenix and Ross purporting to give notice of the pending sale of the property.

Linebarger also provided evidence regarding the nature of its relationship to the taxing entities it represented. Edwards' affidavit provided a timeline of the events forming the basis of Ross's suit and stated in relevant part:

Linebarger is a law firm that represents various taxing entities ... including those taxing entities named in this suit. Linebarger has been specifically engaged by Fort Bend County, Fort Bend Independent School District, and the City of Sugar Land to represent them in the collection of taxes owed to them from taxpayers within the district/county. The taxing entities herein engaged Linebarger to file a prior suit(s) to collect delinquent taxes on their behalf from Plaintiffs named herein. Pursuant to this engagement, and as a result of the contract between Linebarger and the taxing entities, Linebarger did in fact file suit against Plaintiffs.... At all times pertinent hereto, Linebarger was acting at the discretion of the relevant taxing entities in collection efforts against Plaintiffs, in which Linebarger was authorized to collect delinquent taxes on behalf of the taxing authorities as their attorneys.

The record also contains numerous documents signed by Edwards as the attorney representing the taxing entities.

Finally, Linebarger presented evidence relating to Ross's default on the November 2005 installment payment agreement, the second notice of sale to Phoenix, dated May 2006, additional correspondence between Edwards and Ross regarding Ross's

default on the November 2005 installment payment agreement, and Ross's answers to certain interrogatories indicating that her own lawyer had informed her that the deadline to redeem the property was January 10.

In her response, Ross argued that Linebarger was not entitled to any form of immunity and, subject to that argument, that Linebarger carried the burden of establishing its official immunity and had failed to do so because it did not provide any facts proving that it was an employee of the taxing entities rather than an independent contractor. Ross also argued that Edwards' affidavit averring that Linebarger had made no representations to her was insufficient to support Linebarger's plea, and she filed her own affidavit averring facts to the contrary.

Ross also objected to and moved to strike portions of Linebarger's evidence. Specifically, Ross argued that certain items of Linebarger's evidence should be struck because they were requested but not produced prior to Linebarger's filing of its plea to the jurisdiction, motion for summary judgment, and motion to sever. Ross also objected to several items of Linebarger's evidence, arguing that Linebarger had failed to lay the proper predicate for their admission, that Linebarger had failed to authenticate some of the exhibits, and that some of the exhibits constituted inadmissible hearsay.

On January 7, 2010, the trial court denied Ross's motion to strike evidence and overruled all of her objections to Linebarger's evidence. The trial court also signed an order entitled "ORDER GRANTING LINEBARGER DEFENDANTS' PLEA TO THE JURISDICTION." The heading of the order also originally contained the words "and motion to sever," which were struck through by the trial court. The order stated that the trial court, "after reviewing the Plea, Motion and Responses thereto, all pleadings on file, arguments of counsel, and all supporting evidence, is of the opinion that said Plea to the Jurisdiction and Motion to Sever should be and hereby are GRANTED." The trial court further ordered that "all such claims that were raised or could have been raised against Linebarger Defendants by Plaintiff are dismissed with prejudice as to the refiling of same." The trial court then struck through the particular language ordering the severance of the Linebarger defendants' claims. This appeal followed.

## Appellate Jurisdiction

■ We are required to review issues affecting our appellate jurisdiction sua sponte. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex.2004) (per curiam). Because the trial court's January 7, 2010 order addresses only the claims against Linebarger, and the record contains no indication that the trial court has disposed of the taxing entities or Gorringe, the other defendants in this case, the order is not final. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 206 (Tex.2001) (holding that order is final when it disposes of all claims and parties).

However, Civil Practice and Remedies Code section 51.014(a) provides that "[a] person may appeal from an interlocutory order of a district court, county court at law, or county court that … grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008). Section 101.001 defines "governmental unit" as:

   (A) this state and all the several agencies of government that collectively constitute the government of this state … ;

(B) a political subdivision of this state, including any city, county, [and] school district . . . ;

(C) an emergency services organization; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3) (Vernon 2005). The Texas Supreme Court has also held that a "state official sued in his official capacity" should be treated identically to "his employing governmental entity" under section 51.014(a)(8). *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 845 (Tex.2007). Thus, to have jurisdiction over this interlocutory appeal, we must determine (1) whether Linebarger is the equivalent of a "state official" and (2) the capacity in which Ross sued Linebarger.

### A. Linebarger as a "State Official"

■ Ross contends on appeal that Linebarger is not a governmental unit, nor is it a governmental officer or employee of a governmental unit. The Civil Practice and Remedies Code defines "employee" as

a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2) (Vernon 2005).

■ Although her pleadings allege that "Linebarger, Oyugi, Edwards, and Blair are agents of such governmental subdivisions [the taxing entities]," Ross argues on appeal that Linebarger failed to prove that it was an employee rather than an inde-

pendent contractor. However, Ross, as the plaintiff, bears the burden of pleading facts sufficient to establish the trial court's jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). In her petition, she alleged that the law firm and its employees were "agents" of various governmental units, and section 101.001(2) provides that agents in the paid service of a governmental unit are considered employees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (providing that political subdivisions of state, including cities, counties, and school districts, are governmental units), § 101.001(2) (defining employee). Ross has asserted no facts indicating that the taxing entities did not have the legal right to control the details of the tax-collecting task delegated to Linebarger. *See id.* § 101.001(2) (stating that "employee" does not include one whom governmental unit does not have legal right to control details of work).

Thus, we conclude that Ross has presented no evidence to disprove that Linebarger, as an agent of the Fort Bend taxing authorities, stands as the equivalent of a state official or employee. We next determine the capacity in which Ross sued Linebarger.

### B. Capacity

■ "A plaintiff may sue a governmental employee or official in the person's official capacity, individual capacity, or both." *Nueces County v. Ferguson,* 97 S.W.3d 205, 213 (Tex.App.-Corpus Christi 2002, no pet.). Claims against governmental employees in their official capacities are separate and distinct from claims against governmental employees in their individual capacities. *Id.* at 213–14. "It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'" *Koseoglu,* 233 S.W.3d at 844

(quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)). In a suit against a person in his official capacity, the real party in interest is the employing governmental entity. *Id.* A suit against a person in his individual capacity, however, seeks to impose personal liability on the individual being sued for personal actions under color of state law. *Ferguson*, 97 S.W.3d at 214 (citing *Graham*, 473 U.S. at 165, 105 S.Ct. at 3105).

Ross's petition makes various factual allegations and then generally asserts breach of contract, negligent misrepresentation, wrongful foreclosure, claims of substantive and procedural due process violations, a challenge to the validity of the tax sale to Gorringe, and a claim for excess proceeds against "[Fort Bend] County, [Fort Bend] ISD, City [of Sugar Land], Schultz, Linebarger, Oyugi, Edwards and Blair in their official—if any—and individual capacities." Thus, the exact nature of the claims against the law firm and its employees is unclear, and we must examine the "course of proceedings" to determine the nature of the liability Ross seeks to impose. *See id.* at 215 (citing *Graham*, 473 U.S. at 167, 105 S.Ct. 3099 n. 14, 105 S.Ct. at 3106).

In our review of the pleadings, we must ascertain the true nature of the plaintiff's claims and not exalt form over substance. *Pickell v. Brooks*, 846 S.W.2d 421, 424 n. 5 (Tex.App.-Austin 1992, writ denied) (citing *State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961)). Here, Ross alleged a cause of action against the taxing entities and Linebarger for breach of contract, apparently arising from the November 2005 installment payment agreement Ross entered into with Patsy Schultz, the Fort Bend County Tax Assessor, to make payments on her past-due taxes. Ross also alleged negligent misrepresentation, wrongful foreclosure, and procedural due process claims against the taxing entities and Linebarger, apparently based on (1) her allegation that "[n]obody at or for the County could count from July 14, 2006, up 180 days to January 10, 2007 in order to determine the critical deadline for redemption of the Property" and (2) the failure to give her proper notice of the actions being taken against her. Ross specifically alleged that various people, including an unnamed constable and Linebarger employees Edwards and Blair, had misinformed her of the deadline for redeeming the property and that Schultz, Edwards, and Oyugi had given her conflicting information regarding whether she had successfully redeemed the property.

Every allegation in Ross's petition against Linebarger relates to actions taken in the process of collecting taxes on behalf of the taxing entities. She does not allege any claims or actions by Linebarger that were not a part of its effort to collect delinquent taxes. Thus, we conclude that the true nature of Ross's claims is that of claims against Linebarger in its official capacity as an agent of the taxing entities. *See Pickell*, 846 S.W.2d at 424 n. 5 (holding that we must determine true nature of plaintiff's claims); *see also Koseoglu*, 233 S.W.3d at 844 (holding that suit against state official in his official capacity is merely "another way of pleading an action against the entity of which [the official] is an agent").

We conclude that Ross sued the law firm and its employees in their official capacity only. *See Pickell*, 846 S.W.2d at 424 n. 5; *see also Terrell v. Sisk*, 111 S.W.3d 274, 281–82 (Tex.App.-Texarkana 2003, no pet.) (holding that judge was sued in his official capacity only because all allegations in petition "were of claimed wrongdoing or negligence by [the judge] in actions he was able to take only because of his position as

a public servant" and it did not allege any actions taken outside his official capacity).

We therefore conclude that we have interlocutory jurisdiction to review the trial court's grant of Linebarger's plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *Koseoglu*, 233 S.W.3d at 845. We now turn to the merits of Ross's appeal.

### Plea to the Jurisdiction

In her first issue, Ross contends that the law firm and its employees are not entitled to any form of immunity from suit and, therefore, the trial court erred in dismissing all of her claims against the Linebarger defendants.

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that is intended to defeat a cause of action for lack of subject-matter jurisdiction regardless of whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44. The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446.

The existence of subject-matter jurisdiction is a question of law. *State Dep't of Hwys. & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). Therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004).

The plea to the jurisdiction standard mirrors that of a traditional mo-

tion for summary judgment. *Id.* at 228; *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 895 (Tex.App.-Fort Worth 2009, no pet.). The governmental unit must meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228; *Robinson*, 300 S.W.3d at 895. Once the governmental unit meets its burden, the plaintiff must show that there is a disputed material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228; *Robinson*, 300 S.W.3d at 895. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Robinson*, 300 S.W.3d at 895; *see Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 227–28. In deciding a plea to the jurisdiction, a court may not consider the merits of the case, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

### B. Linebarger's Entitlement to Governmental Immunity

Ross contends that Linebarger is not entitled to sovereign, governmental, or official immunity. Linebarger contends that it is entitled to governmental immunity because it and its employees are agents of the taxing entities performing the governmental function of tax collection.

The doctrine of governmental immunity protects political subdivisions of the State from lawsuits for damages ab-

sent a waiver of immunity or legislative consent to sue.[4] *MBP Corp. v. Bd. of Trustees of Galveston Wharves,* 297 S.W.3d 483, 487 (Tex.App.-Houston [14th Dist.] 2009, no pet.). It is undisputed that the taxing entities represented by Linebarger are governmental units. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (defining governmental unit as including "a political subdivision of this state, including any city, county, [and] school district"). It is likewise clear that suits against the taxing entities for actions taken in the course of assessing and collecting taxes are barred by governmental immunity. *See id.* § 101.055 (Vernon 2005) (providing for no waiver of immunity under Texas Tort Claims Act for any claim arising in connection with assessment or collection of taxes by governmental unit).

Although Linebarger itself is not a governmental unit, we have already concluded that Ross sued it as a governmental agent in its official capacity, and thus it can assert the governmental immunity enjoyed by the taxing entities. *See Koseoglu,* 233 S.W.3d at 843–44 (holding that "an official sued in his official capacity would assert sovereign immunity" and that "[w]hen a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself"); *see also Ferguson,* 97 S.W.3d at 215 (holding that government employee sued in his official capacity enjoys sovereign immunity protection only to extent that he was acting in his official capacity). Thus, the question before this Court is whether Linebarger, engaged by the governmental units for the purpose of performing the governmental function of collecting taxes, has established its immunity

from suit as a governmental agent for its actions taken while collecting the taxes. *See Miranda,* 133 S.W.3d at 228 (holding that governmental unit must meet summary judgment standard of proof for its assertion that trial court lacks jurisdiction).

In *City of Houston v. First City National Bank,* this Court addressed the issue of whether counsel for various taxing units was liable for attorney fees incurred by a taxpayer in a suit to force the taxing units to comply with terms of an agreement. 827 S.W.2d 462, 479 (Tex.App.-Houston [1st Dist.] 1992, writ denied). We held that tax collection activity by a city or school district is a governmental, and not a proprietary, function, "and the mere fact that the tax collection function has been assigned to a private law firm does not change the nature of the function from governmental to proprietary." *Id.* at 480. We also observed that section 101.055 of the Texas Tort Claims Act (TTCA) was intended "to insure immunity to the taxing unit while performing the governmental function of collecting revenue." *Id.* at 481. Therefore, "imposing personal liability upon [the taxing unit's] agent while performing this governmental function would be contrary to public policy." *Id.*

In *First City Bank,* we also addressed the nature of the liability of an agent. We discussed the established rule "that where an agent acts on behalf of a disclosed principal ... within the scope of the authority conferred on him, it will not ordinarily be personally liable to the other party to the contract, in the absence of an agreement to the contrary or other circumstances showing that he has, either

4. Sovereign immunity refers to the State's immunity from suit and liability, and is not implicated in this case. *See MBP Corp. v. Bd. of Trustees of Galveston Wharves,* 297 S.W.3d 483, 487 n. 3 (Tex.App.-Houston [14th Dist.] 2009, no pet.). However, the terms "sovereign immunity" and "governmental immunity" are often used interchangeably; therefore, we use term governmental immunity except when quoting a case or other source that uses the term sovereign immunity to refer to the immunity of political subdivisions of the state.

expressly or impliedly, assumed such liability." *Id.* at 480. We stated that the only exceptions to the general rule that "[i]n a legitimate transaction, an agent is ordinarily liable only to his principal" occur when (1) the agent contracts in his own name, (2) the principal is undisclosed, (3) the agent is authorized to act as the owner of the property, or (4) the agent has an interest in the subject matter of the contract. *Id.*

Here, as we have already discussed, Ross's own pleadings allege that the Linebarger defendants were agents of the taxing entities. In her live petition, Ross alleged a cause of action "against County, ISD, City, Schultz, Linebarger, Oyugi, Edwards, and Blair" for breach of contract based on the November 2005 installment payment agreement. Ross also alleged negligent misrepresentation, wrongful foreclosure, and procedural due process claims against the taxing entities and Linebarger based on her allegations that no one gave her proper notice of the actions being taken against her, that "[n]obody at or for the County could count from July 14, 2006, up 180 days to January 10, 2007 in order to determine the critical deadline for redemption of the Property," that various people, including a county official and Linebarger employees, misinformed her of the deadline for redeeming the property, and that Schultz and Linebarger employees had given her conflicting information regarding whether she had successfully redeemed the property.

Every allegation in Ross's petition relates to actions taken by Linebarger in the process of collecting taxes on behalf of the taxing entities. She does not allege any claims or actions taken by the law firm or any of its employees that were not a part of the delegated governmental function of collecting Ross's delinquent taxes.

Ross argues that "[t]he application of [sovereign immunity] and [governmental immunity] to law firms collecting taxes has been rejected," relying on *Gonzalez v. Heard, Goggan, Blair & Williams*, 923 S.W.2d 764 (Tex.App.-Corpus Christi 1996, writ denied) and *Zuniga v. Navarro & Assocs., P.C.*, 158 S.W.3d 663 (Tex.App.-Corpus Christi 2005, pet. denied). However, Ross misreads the holdings in *Gonzalez* and *Zuniga,* both of which are distinguishable from the present case.

In *Gonzalez,* the Corpus Christi Court of Appeals reversed the trial court's rendition of summary judgment in favor of a law firm on the ground of sovereign immunity because it determined that the law firm had not presented adequate evidence to establish whether it was "an independent contractor or an agent/employee" of the taxing units. 923 S.W.2d at 766. In *Gonzalez,* the court also noted that the firm was "sued for its own actions involving foreclosure on the Gonzalez' property, not the actions of the taxing entities." *Id.* at 767. In *Zuniga,* the court relied on *Gonzalez* in reversing the trial court's summary judgment in favor of the law firm on the grounds of sovereign and official immunity, again because the firm had failed to produce adequate summary judgment evidence to establish that it was an agent-employee of the governmental entity acting in good faith. 158 S.W.3d at 673. As in *Gonzalez,* the plaintiffs did not sue the law firm for acts in foreclosing on or selling the property. *Id.* at 668. Instead, the plaintiffs in *Zuniga,* who were not the original owners of the property, but were the purchasers of the property at the foreclosure sale, based their claims on "misrepresentations made outside the foreclosure or tax collection process." *Id.*

Ross, by contrast, alleged all of her causes of action against both the taxing entities and Linebarger. Her pleadings make it clear that, just as in *First City Bank,* she is suing Linebarger for its ac-

tions taken in the course of accomplishing the governmental act delegated to it by the taxing entities that enjoy immunity for the very same act. *See First City Bank*, 827 S.W.2d at 480–81. Thus, we conclude that imposing personal liability on Linebarger for actions taken while performing the governmental function of collecting taxes would be contrary to public policy. *See id.* at 481.

■ We conclude that the trial court correctly granted Linebarger's plea to the jurisdiction and dismissed all of Ross's claims against the law firm and its employees.[5]

We overrule Ross's first issue.

### Evidentiary Rulings

■ In her second and third issues, Ross complains about the evidentiary rulings of the trial court. Ross filed a motion to strike and various objections to portions of the evidence that Linebarger attached to its plea to the jurisdiction, motion for summary judgment, and motion to sever. The trial court denied the motion to strike and overruled all of the objections.

To obtain reversal of a judgment based upon the improper admission of evidence, Ross must show that the trial court committed error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a). Error based on the admission of evidence is generally not reversible unless the appellant can demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

Ross cannot demonstrate that the trial court's judgment turned on any particular evidence admitted by the trial court. As we have already discussed, the facts as alleged in her own pleadings are sufficient to support the trial court's determination that all of her claims against Linebarger are barred by immunity. Thus, any extraneous evidence attached to Linebarger's plea to the jurisdiction, motion for summary judgment, and motion to sever is irrelevant to the disposition of this case. *See id.*

We overrule Ross's second and third issues.

### Conclusion

We affirm the order of the trial court granting the plea to the jurisdiction of appellees Linebarger, Goggan, Blair & Sampson, LLP, Mandy Oyugi, Damon D. Edwards, and Maris A. Blair.

5. Ross's petition also asserts waiver of immunity by the defendants, including Linebarger, by breach of contract and waiver by conduct. These grounds for waiver of immunity are not addressed in Ross's appellate brief, and are therefore waived for failure to brief. *See* Tex. R.App. P. 38.1(i).